

**Dated: May 12, 2016**

**The following is ORDERED:**

Sarah A Hall
United States Bankruptcy Judge

_____

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BRENT C. COOLEY, | ) | Case No. 15-10555-SAH |
| | ) | |
| Debtor. | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| STACEY HAGMAIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Pro. 15-01214-SAH |
| | ) | |
| BRENT COOLEY, | ) | |
| | ) | |
| Defendant. | ) | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

After considering the pleadings filed, the stipulations contained in the Joint Final Pretrial

Order [Doc.28], and the evidence and testimony presented at the trial held on March 28, 2016,

the Court adopts the following as its findings of fact and conclusions of law pursuant to Rule

7052 of the Federal Rules of Bankruptcy Procedure.

I.    **PROCEDURAL HISTORY**.

To a degree, this case is "an unfortunate tale of poor lawyering." Smith v. McCord, 707

F.3d 1161, 1162 (10th Cir. 2013).   Plaintiff Stacey Hagmaier ("Hagmaier") claims that in March

1996 defendant Brent Cooley ("Cooley") raped her.  In the aftermath, Hagmaier filed a state

court action (the "Civil Action") and obtained a $400,000 summary judgment against Cooley (the

"Judgment").  After Cooley filed bankruptcy, Hagmaier filed an adversary Complaint [Doc. 1]

against Cooley initiating the above-captioned adversary proceeding in order to except the

Judgment from his discharge pursuant to 11 U.S.C. § 523(a)(6).

A Scheduling Order [Doc. 20] was entered on November 18, 2015, establishing the

following deadlines:

| | |
|---|---|
| Deadline to file final witness and exhibit lists and to exchange any exhibits not previously furnished to opposing counsel | February 17, 2016 |
| Deadline to submit proposed Final Pretrial Order | March 18, 2016 |
| Deadline to mark and exchange with opposing counsel trial exhibits | March 23, 2015 at 12:00 p.m. |

The first lawyering problem was encountered when the Court returned the original Joint Final

Pretrial Order to Hagmaier's counsel on Monday, March 21, 2016, because Hagmaier's trial

exhibits were generically identified and needed to be separately identified and numbered.

Hagmaier ignored the Court's instructions (the second lawyer problem).  Finally, on Friday,

March 25, 2016, the Court was forced to notify Hagmaier's counsel that, in spite of clear

instructions in the Scheduling Order, a pretrial order had not been signed and no exhibits had

been provided to the Court (the third lawyering problem).  Hagmaier's counsel then uploaded a

revised Joint Final Pretrial Order (which was entered on March 25, 2016, [Doc. 28]), and copies of Hagmaier's trial exhibits were delivered to the Court late that afternoon.

At trial on Monday, March 28, 2016, Cooley objected to the admission of Hagmaier's trial exhibits for two reasons:  (i) Hagmaier never exchanged exhibits with Cooley prior to the February 17, 2016, deadline; and (ii) Hagmaier failed to deliver the trial exhibits to Cooley until the morning of trial.  Based on the language of the Scheduling Order,[1] and the prejudice to Cooley, the Court refused to admit Hagmaier's trial exhibits.[2]

---

[1]The Scheduling Order specifically provides (emphasis added):

> The final lists of witnesses and exhibits shall be in the form of a pleading filed with the Clerk of this Court and properly served on all parties in interest, identifying the same as the party's final lists of witnesses and exhibits.  Except for reasons of manifest injustice, no witness who is not identified on the final list of witnesses shall be permitted to testify, and ***no exhibit that is not identified on the final list of exhibits and is not exchanged as set forth above shall be received into evidence.***  The requirement of advance identification of witnesses and identification and exchange of exhibits does not apply to witnesses and exhibits presented only for the purpose of impeachment or rebuttal.

[2]Even if the Court did not exclude Hagmaier's trial exhibits, the only trial exhibits identified by Hagmaier in the Joint Final Pretrial Order were docket sheets from a Canadian County Criminal Case against Cooley (which was dismissed) and the Civil Case, and the petition, a journal entry of judgment and a judgment in the Civil Case.  This Court had previously denied Hagmaier's motion for summary judgment [Doc. 19] because, among other things, Hagmaier sought to apply issue preclusion based on the Judgment in the Civil Case but failed to present the entire judgment roll from the Civil Case as required by Oklahoma law.  See Salazar v. The City of Oklahoma City, 1999 OK 20, 976 P.2d 1056, 1061 (1999) (Oklahoma courts require a party relying on issue preclusion to "'produce - as proof of its terms, effect and validity - the *entire* judgment roll for the case which culminated in the decision invoked as a bar to relitigation.'").  As a result, even if Hagmaier's trial exhibits had been admitted, she would have failed for a second time to produce the entire judgment roll.  This would have made it impossible for this Court to determine what issues were actually litigated in the Civil Case and the legal standards employed, so no preclusive effect could be given thereto.

Plaintiff called a Canadian County Deputy Court Clerk to testify concerning the contents of the record in the Civil Case. The Court declined to allow the testimony because Hagmaier would not be able to elicit testimony concerning any of the documents that comprise the Civil Case's docket; therefore, all of her testimony that might have bearing on the issue preclusive effect of the Judgment would be inadmissible hearsay.

## Findings of Fact

1.  Prior to March 8, 1996, Hagmaier and Cooley were more than acquaintances; they dated and even co-habitated for a number of years.

2.  On March 7, 1996, after Cooley failed to show up for a planned lunch with Hagmaier,[3] Hagmaier went to Cooley's parents' house where she found him with another woman.

3.  Angry and hurt, Hagmaier left Cooley's parents' house, returned to her house to remove Cooley's toiletries and then drove back to Cooley's parents' house where she spoke to Cooley and threw his belongings out of her car.

4.  Hagmaier returned to her house and was awakened by a call from Cooley, who had been drinking, sometime after 10:00 p.m. Hagmaier told Cooley to leave her alone.

5.  Cooley then went to Hagmaier's house.

---

[3]Glaring inconsistencies between Hagmaier's testimony in Cooley's preliminary hearing (the "Preliminary Hearing") in the Criminal Case (held September 13, 1996, 19 ½ years prior to this trial but only 6 months after the alleged incident) and her testimony in this adversary proceeding undermined her credibility severely throughout the trial. For instance, she testified that she had not spoken to Cooley, prior to the alleged rape, for 6-7 months. In contrast, at the Preliminary Hearing, she testified that she had been to his parents' house the night before and was talking to Cooley regularly at that time.

6.     Hagmaier answered the door.  Although at trial she testified that he kicked the door in,
       Hagmaier's testimony at the Preliminary Hearing was that she unlocked the door and
       turned around and Cooley entered.  Her prior testimony is consistent with Cooley's
       testimony at trial.

7.     An argument ensued, and Cooley pushed Hagmaier onto the couch.

8.     The noise from their argument awakened her daughter, and Cooley got up and went to
       check on her, then returned.[4]

9.     Thereafter, Hagmaier claims Cooley raped her.  Cooley denies raping her or even having
       sex with Hagmaier that night.

10.    While Cooley was in her house, Hagmaier had access to a telephone in her living room
       but did not use it.

11.    Hagmaier reported a rape to the Yukon police department the following day.

12.    Criminal charges were filed against Cooley but were later dismissed for lack of evidence.

13.    There is no evidence that Cooley's semen was found on any item that the police took
       from Hagmaier's house.

14.    Hagmaier filed the Civil Case against Cooley on July 20, 1998.

15.    On May 23, 2000, the Judgment was entered in the Civil Case in Hagmaier's favor and
       against Cooley as follows:  $200,000 actual damages and $200,000 punitive damages.

---

[4]At trial, Hagmaier testified that, when her young daughter made noise, Cooley started down the hall, and she told him to leave her daughter alone and do whatever he planned to do to Hagmaier instead (clearly suggesting he was going to harm her daughter).  Once again, Hagmaier's recollection of the events 19 ½ years later differs significantly from her testimony at the Preliminary Hearing in the Criminal Case only 6 months after the night in question.  Therein, Hagmaier testified Cooley went down to check on her daughter when she was awakened by their argument and made no allegation that he was going to harm her daughter.

Cooley claims that he lacked notice of the filing of the motion for summary judgment;

therefore, he did not object to the motion for summary judgment.

16.    Thereafter, Cooley filed a motion to vacate the Judgment in the Civil Action, which was

denied.  Subsequently, Hagmaier pursued enforcement of the Judgment.

17.    Cooley filed a voluntary petition under chapter 7 of the Bankruptcy Code on February 20,

2015.

18.    On May 4, 2015, Hagmaier commenced this adversary proceeding to except the Judgment

from Cooley's discharge.

Conclusions of Law

19.    The denial of a debtor's discharge is a harsh remedy, reserved only "for a truly pernicious

debtor."  Duff v. Ayala (In re Ayala), 516 B.R. 645, 650 (Bankr. D. N.M. 2014) (citing

Soft Sheen Products, Inc. v. Johnson (In re Johnson), 98 B.R. 359, 367 (Bankr. N.D. Ill.

1988) (citing In re Shebel, 54 B.R. 199, 204 (Bankr. D. Vt. 1985))).  Accordingly, the

provisions of Section 523(a) are construed liberally in favor of the debtor and strictly

against the creditor.   Ayala, 516 B.R. at 650 (citing Soft Sheen Products, Inc. v. Johnson

(In re Johnson), 98 B.R. 359, 364 (Bankr. N.D. Ill. 1988)).

20.    11 U.S.C. § 523(a)(6) excepts from discharge a debt "for willful and malicious injury by

the debtor to another entity or to the property of another entity."

21.    At trial, Hagmaier testified that she recovered the Judgment against Cooley based on the

alleged rape on March 7, 1996,[5] and this is the debt she seeks to except from Cooley's

---

[5]The timing of the alleged rape was not clear; it could have been late on March 7 or early
on March 8.  For simplicity, the Court will refer to the date as March 7, 1996.

discharge pursuant to Section 523(a).  Because the Court did not have the Judgment or the judgment roll from the Civil Action, this Court cannot rely on the entry of the Judgment to prove that it arose as a result of a willful and malicious injury but instead must look only to the evidence presented at trial to determine if Section 523(a)(6) applies.

22.    The United States Supreme Court holds that, to be nondischargeable under Section 523(a)(6), the "judgment debt must be 'for willful and malicious *injury.*'" Kawaauhau v. Geiger, 523 U.S. 57, 63 (1998).  Section 523(a)(6) requires proof of both willful and malicious conduct.  Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley), 235 B.R. 651, 655 (10th Cir. BAP 1999) (failure of a creditor to establish either willfulness or malice renders the debt dischargeable).  Thus, Section 523(a)(6) encompasses only acts done with the actual intent to cause injury.  Via Christi Reg'l Medical Ctr. v. Englehart (In re Englehart), 229 F.3d 1163 (10th Cir. 2000) (unpub.) (citing Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998)).

23.    Accordingly, Hagmaier was required to prove that Cooley raped her on March 7, 1996.  Hagmaier's testimony about the events leading up to the alleged rape was conflicting at best.  During the trial, Hagmaier's recounting of the day and night of the alleged rape included no contact from Cooley during the immediate past 6-7 months, Cooley kicking in her front door, Cooley going down the hallway to do unknown things to her daughter, and Hagmaier begging him to harm her instead.

24.    However, during Cooley's Preliminary Hearing in 1996,[6] Hagmaier testified that she had

regular contact with Cooley and called Cooley the day before to make lunch plans for

March 7, 1996.  She also testified that Cooley did not show up for lunch, so she went to

his parents' house and found him to be with another women.  Hagmaier then went to her

house, got his toiletries, went back to his parents' house and threw them out.  Hagmaier

also stated, during the Preliminary Hearing, that, when Cooley showed up at her house on

March 7, 1996, she opened the door to Cooley and turned and walked away with the door

open so that Cooley was able to walk into the house rather than kick the door down.

Finally, she also testified at the Preliminary Hearing that Cooley went to check on her

daughter after she awakened due to their argument rather than suggesting he was going to

do something insidious to her daughter.

25.    The wildly different accounts of March 7, 1996, seriously undermine Hagmaier's

credibility, given that her current version of the facts, some 20 years after the alleged

rape, contains obvious enhancements to Cooley's behavior that would have been critical

to, and seemingly more readily recalled during, the Preliminary Hearing in 1996.

Hagmaier was not able to offer a plausible explanation for the inconsistencies and, due to

her counsel's ineptitude, she could not offer evidence to corroborate her current version

---

        [6]As it bears heavily on this Court's credibility analysis, Hagmaier's testimony during the
Preliminary Hearing took place approximately six months after the alleged rape.  Her testimony
during the trial of this adversary proceeding was approximately 20 years after the alleged rape.
When asked about inconsistencies between her testimony, Hagmaier first stated that it was a long
time ago and could not remember, but then said that her memory of the time was accurate as to
what happened but not with respect to "all the little stuff in between; I don't remember all that."
This explanation is less than satisfying, particularly because the new facts all conveniently paint a
more aggressive, more physical meeting between Hagmaier and Cooley.

of the events that occurred March 7, 1996. This Court believes that Hagmaier's rendition of the events of March 7, 1996, during the Preliminary Hearing, an event only six months after the alleged rape, is more credible than Hagamier's more recent testimony. Rhodes v. Ayala (In re Ayala), 335 B.R. 763, 765 (Bankr. D. Wyo. 2005).

26.    Cooley denies that he raped Hagmaier and even denies that he had sex with her on March 7, 1996. He testified that his semen was not found, and this fact was not disputed by Hagmaier.

27.    Moreover, Cooley was not criminally convicted. In fact, all charges against him were dismissed; therefore, the Criminal Case, likewise, offers no evidentiary insights into Cooley's actions or intent.

28.    Finally, Hagmaier obtained entry of the Judgment in the Civil Action and was awarded damages. Unfortunately, no evidence was presented that established the facts on which the Judgment was based or the legal standards used by the Court in granting summary judgment.[7] As a result, no evidentiary support can be taken from the Judgment as to Cooley's conduct or intent.

29.    Consequently, this case is a classic example of a "he said, she said" conundrum. Unfortunately, Hagmaier's conflicting testimony and failure to present corroborating evidence to establish that a rape in fact occurred require that this Court find that Cooley

---

[7]Hagmaier failed to supply the judgment roll from the Civil Action from which this Court could make a determination that the trial court found that Cooley raped Hagmaier much less that Cooley acted intentionally in raping Hagmaier and knew or was substantially certain that Hagmaier would be harmed by such act.

did not rape – and therefore, did not, as a matter of law, injure – Hagmaier on March 7, 1996.

30.    Even if this Court concluded that Cooley raped Hagmaier – which it does not given the evidentiary record before the Court – Hagmaier would still be required to prove that Cooley's actions caused a willful and malicious injury under Section 523(a)(6).

31.    Willfulness under Section 523(a)(6) requires "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." <u>Tso v. Nevarez</u> (<u>In re Nevarez</u>), 415 B.R. 540, 543-544 (Bankr. D. N.M. 2009) (citing <u>Geiger</u>, 523 U.S. at 61, 118 S.Ct. 974)). Maliciousness requires that the intentional act be "'performed without justification or excuse.'" <u>Nevarez</u>, 415 B.R. at 544 (citing <u>America First Credit Union v. Gagle</u> (<u>In re Gagle</u>), 230 B.R. 174, 181 (Bankr. D. Utah 1999). The mere fact that a debtor's conduct was deliberate is not sufficient under Section 523(a)(6). <u>Lewis v. Long</u> (<u>In re Long</u>), 528 B.R. 655 (Bankr. W.D. Okla. 2015).

32.    "[T]he 'willful and malicious injury" exception to dischargeability in Section 523(a)(6) turns on the state of mind of the debtor, who must have wished to cause injury or at least believed it was substantially certain to occur. When a given injury was "neither desired nor in fact anticipated by the debtor," it is outside the scope of the statute. <u>Englhart</u>, 229 F.3d 1163 (citing <u>Geiger</u>, 523 U.S. at 62)).

33.    The burden of proving such intent rests on the plaintiff asserting nondischargeability. Courts must focus on the subjective intent of the debtor to determine whether the injury was intended or unintended. <u>Englehart</u>, 229 F.3d 1163. A plaintiff must satisfy a preponderance of the evidence burden of proof. <u>Long</u>, 528 B.R. at 661.

34. Willful injury "may be satisfied by showing that the debtor desired the consequences of his act or knew or believed that injury to the creditor, although not desired, was substantially certain to result from his actions." Exchange Bank v. Burd (In re Burd), 2007 WL 2401836 (Bankr. N.D. Okla. 2007 (citing Via Christi Reg'l Med. Ctr. v. Budig (In re Budig), 240 B.R. 397, 401 (Bankr. D. Kan. 1999)). See also Berrien v. Van Vuuren, 280 F. App'x 762, 766 (10th Cir. 2008) (unpub.) (citing Panalis v. Moore (In re Moore), 357 F.3d 1125, 1129 (10th Cir. 2004)). Willful injury may be established by direct evidence of a specific intent to harm the creditor. Burd, 2007 WL 2401836 (citing Mitsubishi Motors Credit of America, Inc. v. Longley (In re Longley), 235 B.R. 651, 657 (10th Cir. BAP 1999)). Alternatively, evidence of a debtor's state of mind may be inferred from the surrounding circumstances. Penix v. Parra (In re Parra), 483 B.R. 752, 772 (Bankr. D. N.M. 2012 (citing Nat'l Labor Relations Board v. Gordon (In re Gordon), 303 B.R. 645, 656 (Bankr. D. Colo. 2003)).

35. When questioned during closing arguments, Hagmaier's counsel stated that her position is that intent to commit an act supplies enough evidence of deliberate indifference to satisfy the intent to injure required under Section 523(a)(6). This Court disagrees. Based on the controlling authorities, deliberate indifference is a far cry from intending to cause an injury or being substantially certain that an injury will occur as a result of one's actions. Moreover, even if Hagmaier's counsel was correct, his trial preparation and presentation did nothing to establish even Cooley's deliberate indifference.

36. Moreover, as a result of such misapprehension, Hagmaier utterly failed to focus on proving Cooley's intent. There was no evidence that Cooley disliked or harbored ill will

-11-

toward Hagmaier or that Cooley believed the consequences of his actions that night were substantially certain to occur and injure Hagmaier.  See <u>Nevarez</u>, 415 B.R. at 544 (drunk driving liability).  Also seriously lacking at trial was any evidence regarding Cooley's demeanor (other than that he had been drinking) from which this Court could infer his intent.

37.    The Court sympathizes with Hagmaier and understands that she clearly harbors great animosity towards Cooley.  Hagmaier, however, bore the burden of proof to establish through admissible evidence that Cooley acted with the intent to injure her without justification or excuse.  Notwithstanding such burden, Hagmaier presented no evidence of Cooley's subjective intent at any phase of the trial.  As a result, the Court lacked any facts from which it might draw inferences concerning Cooley's intent.  Cooley was not criminally convicted for rape.[8]  Hagmaier failed to offer pleadings or documents from the Civil Case that would allow this Court to find that Cooley acted with the specific intent to harm Hagmaier or even that he acted knowing with substantial certainty that she would be harmed that fateful night.

38.    Hagmaier's emotions seem real and deep.  Unfortunately, Cooley's subjective intent cannot be measured by Hagmaier's emotions.  Begrudgingly, this Court can only act within the confines of Section 523(a)(6) as interpreted by the U.S. Supreme Court in <u>Geiger</u>, which requires not just an intentional act but an intentional injury.  <u>Geiger</u>, 523 U.S. at 61-62.

---

[8] Additionally, in Oklahoma, rape is a general intent crime.  <u>Fairchild v. State</u>, 998 P.2d 611, 619-620 (Okla. Crim Ct. 1999) (citing <u>Boyd v. State</u>, 572 P.2d 276 (Okla. Cr. 1977)).

39.   Hagmaier's counsel not only failed to comply with this Court's guidance concerning

disclosure and exchange of witnesses and exhibits and to prove Cooley's intent, he also

failed to elicit any testimony demonstrating that Hagmaier sustained an injury.

40.   In sum,

> This isn't to say [Hagmaier] lacked (or possessed) a meritorious
> case. It is to say only we will never know because clients like
> [Hagmaier] are usually bound by their lawyers' actions—or, as
> here, inactions. Sometimes that means good cases are lost by bad
> lawyers, a lamentable cost of our legal system.

Smith v. McCord, 707 F.3d 1161 (10th Cir. 2013). The Court's unshakable conclusion is

that as a result of her counsel's actions, omissions and decisions, Hagmaier failed to carry

her burden of proving that Cooley willfully and maliciously injured her.

_____

Accordingly, judgment will be entered in favor of Cooley and against Hagmaier on the

claim brought pursuant to 11 U.S.C. § 523(a)(6).

IT IS SO ORDERED.

#  #  #